# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * | * | |
| DANA KENDRICK, | * | No. 22-639V |
| *on behalf of C.E.K., a minor,* | * | |
| | * | |
| Petitioner, | * | |
| | * | Special Master Christian J. Moran |
| v. | * | |
| | * | Filed: August 23, 2024 |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * * * * * * * | | |

Sean Greenwood, The Greenwood Law Firm, Houston, TX, for petitioner;
Felicia Langel, United States Dep't of Justice, Washington, DC, for respondent.

## PUBLISHED DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

Ms. Dana Kendrick, on behalf of C.E.K., a minor, alleged that C.E.K. suffered from brain inflammation, expressive language disorder, and chronic inflammatory response syndrome as a result of receiving the diphtheria-tetanus-acellular pertussis ("DTaP") and pneumococcal conjugate 13 vaccines beginning

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the Decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. Any changes will appear in the document posted on the website.

August 2, 2019.  Pet., filed June 9, 2022.  At her request, the case was dismissed. Entitlement Decision, issued Oct. 2, 2023, 2023 WL 7001664.

She is requesting an award of her attorneys' fees and costs.  The Secretary opposes any award on the ground that Ms. Kendrick has not established that reasonable basis supported the claim set forth in the petition.  For the reasons explained below, Ms. Kendrick has established---by a slim margin---that a reasonable basis supported her claim.  Thus, she is eligible for a reasonable amount of attorneys' fees and costs.  She is awarded **$28,892.92**.

I.      **Medical History**

C.E.K. was born on May 25, 2019.  Exhibit 3 at 11.  She was discharged five days later.  Id. at 29-30.  Over the next year and a half, she received typical childhood vaccines.  See Resp't's Rep., filed May 1, 2023, at 3, citing various medical records.

In August 2020, C.E.K. saw her pediatrician, Dr. LaCourt, for a 15-month well-child visit.  Exhibit 4 at 30 (Aug. 21, 2020).  During this appointment, C.E.K. received her fourth dose of the DTaP vaccination.  Id.

A pediatric neurologist, Melissa Jones, saw C.E.K. on September 10, 2020.  Ms. Kendrick reported that her daughter has "[s]tarted to have abnormal movements," including "head bobs."  Exhibit 7 at 118.  Ms. Kendrick also informed Dr. Jones that C.E.K. was "[n]onverbal – does not say mama or dada." Id. at 119.

Ms. Kendrick also provided information about events that were reported to have occurred well before the September 10, 2020 appointment.  Ms. Kendrick stated that after the first DTaP vaccination on August 2, 2019, C.E.K. had "full body flushing."  Exhibit 3 at 118.  Ms. Kendrick also stated that after a PCV vaccination on September 4, 2019, C.E.K. had a "transient [abnormal] movement." Id.  However, the medical records created closer in time to the August 2, 2019 vaccination and the September 4, 2019 vaccination do not memorialize these events.  See Exhibit 4 at 15-16; but see Pet. ¶ 7 (asserting that Ms. Kendrick reported a reaction to the DTaP vaccine to Dr. LaCourt).

Dr. Jones assessed C.E.K. as having delayed speech.  Id. at 117.  Dr. Jones also said C.E.K. had abnormal involuntary movements, expressive language disorder, and feeding difficulties.  Id. at 120.  Dr. Jones wrote: "She had a DTaP vaccine 5 weeks ago which may have triggered these movements."  Id.

Dr. Jones ordered testing for inflammatory markers and a brain MRI, which was normal. Over the next few years, as Dr. Jones continued to treat C.E.K., more and more tests were ordered. The results generally do not contribute to determining whether reasonable basis supported the claim set forth in the petition. For a summary, see Pet. ¶¶ 14-21 and Resp't's Rep. at 6-11. More important comments from Dr. Jones include:

> A recommendation to delay future vaccinations. Exhibit 7 at 115-17 (Oct. 27, 2020);

> A statement providing a temporal sequence: C.E.K. has a "history of developmental regressions and abnormal movements following vaccinations." Id. at 104-06 (June 22, 2021).

## II. Procedural History

### A. Entitlement Phase

Ms. Kendrick communicated with Mr. Greenwood's law firm in June 2021. Exhibit 13 (Timesheets) at 1. Over the next year or so, staff in Mr. Greenwood's office collected medical records. During this time, Mr. Greenwood consulted an unnamed neurologist about brain inflammation. Id. at 6 (entry for Jan. 27, 2022).

Ms. Kendrick filed the petition on June 9, 2022. She alleged that C.E.K.'s "brain inflammation, expressive language disorder, and chronic inflammatory response syndrome result[ed] from the DTaP and PCV 13 vaccines beginning August 2, 2019." Pet. at Preamble. She filed medical records and confirmed that the record was complete on December 27, 2022.

Upon being assigned to the undersigned, a comprehensive schedule was set. Order, issued Jan. 30, 2023. Among other deadlines, Ms. Kendrick was required to support her claim with an expert report by September 1, 2023.

Other events took place before September 1, 2023. Ms. Kendrick identified two treating doctors who had associated vaccination with C.E.K.'s injuries. Pet'r's Status Rep., filed Mar. 6, 2023. The Secretary maintained that Ms. Kendrick was not entitled to compensation. Resp't's Rep.

Periodically, Mr. Greenwood was consulting experts. Exhibit 13 (Timesheets), entries for Feb. 16, 2023; Feb. 24, 2023; Aug. 22-30, 2024. In this context, Dr. Jones declined to be an expert witness, writing there is "no definitive

3

proof such as blood test or imaging, etc that would prove it was vaccines and vaccines alone." Pet'r's Status Rep't, filed Sep. 20, 2023, at attachment C.  By September 1, 2023, Mr. Greenwood was informing Ms. Kendrick that he could not find an expert.

On September 20, 2023, Ms. Kendrick filed a motion to dismiss her case. The case, accordingly, was dismissed.  Entitlement Decision, issued Oct. 2, 2023, 2023 WL 7001664.  Judgment entered on November 8, 2023.

### B. Fees Phase

Ms. Kendrick filed her pending motion for attorneys' fees and costs on February 15, 2024.  Her discussion of evidence supporting reasonable basis was approximately one-half page.  Pet'r's Mot. at 5-6.  She also asserted that she acted in good faith.  Id. at 6-7.  Finally, Ms. Kendrick maintained that the amount of attorneys' fees and costs she requested was reasonable.

The Secretary deferred to the special master's assessment in a boilerplate response.  Resp't's Resp., filed Feb. 21, 2024.  This lack of engagement was not appropriate, and the Secretary was directed to take a position on reasonable basis.  Order, issued June 10, 2024.  The Secretary argued that Ms. Kendrick lacked a reasonable basis.  Resp't's Supp'l Resp., filed June 24, 2024.

## III. Analysis Part One – Eligibility for Attorneys' Fees and Costs

### A. Standards for Adjudication

Petitioners who have not been awarded compensation (like Ms. Kendrick here) are eligible for an award of attorneys' fees and costs when "the petition was brought in good faith and there was a reasonable basis for the claim."  42 U.S.C. § 300aa-15(e)(1).  As the Federal Circuit has stated, "good faith" and "reasonable basis" are two separate elements that must be met for a petitioner to be eligible for attorneys' fees and costs.  Simmons v. Sec'y of Health & Hum. Servs., 875 F.3d 632, 635 (Fed. Cir. 2017).  Here, the Secretary has not raised a challenge to Ms. Kendrick's good faith.  Thus, the disputed issue is reasonable basis.

In Cottingham, the Federal Circuit stated that the evidentiary burden for meeting the reasonable basis standard "is lower than the preponderant evidence standard."  971 F.3d at 1346.  Something "more than a mere scintilla" might establish the reasonable basis standard.  Id. at 1356.  Petitioners meet their evidentiary burden with "objective evidence."  Id. at 1344.  In categorizing medical

4

records as objective evidence, the Federal Circuit stated, "[m]edical records can support causation even where the records provide only circumstantial evidence of causation." Id. at 1346.  Finally, the Federal Circuit in Cottingham specified that "[w]e make no determination on the weight of the objective evidence in the record or whether that evidence establishes reasonable basis, for these are factual findings for the Special Master and not this court." Id. at 1347.

In its most recent precedential opinion regarding the reasonable basis standard, the Federal Circuit stated that medical records, affidavits, and sworn testimony all constitute objective evidence to support reasonable basis.  James-Cornelius, 984 F.3d at 1379-81.  The Federal Circuit further clarified that "absence of an express medical opinion on causation is not necessarily dispositive of whether a claim has reasonable basis, especially when the case is in its early stages and counsel may not have had the opportunity to retain qualified experts." Id. at 1379 (citing Cottingham, 971 F.3d at 1346).  These two most recent decisions guide the analysis regarding what types of evidence constitute objective evidence of reasonable basis, as originally articulated in Simmons, though the ultimate weighing of such evidence is left up to the special master.

## B.  Evaluation of Evidence regarding Reasonable Basis

In arguing against reasonable basis, the Secretary contends that Ms. Kendrick has not presented "a scintilla of evidence to support the basic elements of her claim." Resp't's Supp'l Resp. at 11.  To support this assertion, the Secretary essentially makes two points.  First, the Secretary notes that Ms. Kendrick did not support her claim with the report from an expert.  Second, the Secretary disputes the sufficiency of Dr. Jones's medical records.  Id. at 11-12.  As to the first point, the Secretary is correct that Ms. Kendrick did not support her claim with an expert.  Thus, Ms. Kendrick's eligibility for an award of attorneys' fees and costs rises and falls with the strength or weakness of the medical records from Dr. Jones.  See Pet'r's Mot. ¶¶ 33-34 (identifying only Dr. Jones as a treating doctor supporting the claim).

Dr. Jones supports Ms. Kendrick's reasonable basis because Dr. Jones wrote C.E.K. "had a DTaP vaccine 5 weeks ago which may have triggered these movements." Exhibit 7 at 120.  Unlike some medical records that simply set out a temporal sequence, Dr. Jones used the phrase "may have triggered," which is compatible with a statement of causation.  To be sure, the phrase "may have" suggests a hesitancy or uncertainty in Dr. Jones's opinion and this qualification may not have carried Ms. Kendrick's burden of proof in the entitlement stage.  But,

in the reasonable basis stage, Ms. Kendrick's burden of proof is lower and Dr. Jones's statement constitutes at least of scintilla of evidence that some medical professional causally linked the DTaP vaccination with C.E.K.'s abnormal movements.  C.f. 42 U.S.C. § 300aa–13(a) (allowing a special master to find entitlement based upon "medical records or medical opinion").

The Secretary attempts to negate the value of Dr. Jones's medical records by pointing out that Dr. Jones later stated, "that there is no 'single precise test to establish causation by a vaccine.'"  Resp't's Supp'l Resp. at 12, quoting Pet'r's Status Rep., filed Sept. 20, 2023 at 3 (paraphrasing Dr. Jones' email, Id. at attachment C).  Additionally, there is at least some question as to whether Dr. Jones received inaccurate information.

As to the value of a treating doctor's statement of causation in the context of an argument regarding reasonable basis, Ms. Kendrick's case seems reminiscent of Wirtshafter v. Sec'y of Health & Hum. Servs., No. 18-1562V, 2021 WL 1906258, (Fed. Cl. Spec. Mstr. Apr. 16, 2021).  In Wirtshafter, the (undersigned) special master found that evidence from a treating doctor did not support a finding of reasonable basis for various reasons.  Id. at *8-9.  However, after a motion for review was filed, the Court concluded that the petitioner satisfied the reasonable basis standard because "'some evidence'" supported her claim.  155 Fed. Cl. 665, 675 (2021).  Although the Court's opinion in Wirtshafter is not binding, its guidance remains applicable.  See Midnight v. Sec'y of Health & Hum. Servs., No. 17-905V, 2022 WL 2840496, at *4-5 (Fed. Cl. Spec. Mstr. June 29, 2022).

For these reasons, there is a sufficient quantum of evidence for Ms. Kendrick to clear the reasonable basis hurdle.  Thus, she is eligible for a discretionary award of attorneys' fees and costs.

### C. Discretion to Award Attorneys' Fees and Costs

Technically, a finding of reasonable basis does not absolutely guarantee an award of attorneys' fees and costs.  The Vaccine Act provides that upon a finding of good faith and reasonable basis a special master "may" (not shall) award reasonable attorneys' fees and costs.  42 U.S.C. § 300aa–15(e).  The Federal Circuit has recognized that even after a finding of reasonable basis, a special master possesses "discretion" to award attorneys' fees and costs.  James-Cornelius v. Sec'y of Health & Hum. Servs., 984 F.3d 1374, 1381 (Fed. Cir. 2021).

The undersigned is not aware of any decision in which a special master (a) found good faith and reasonable basis and (b) exercised discretion to deny attorneys' fees and costs. Ms. Kendrick's case will not break any new ground.

Nevertheless, the course of Ms. Kendrick's case beginning with Mr. Greenwood's acceptance of the case raises some questions. Before Mr. Greenwood submitted the petition on Ms. Kendrick's behalf, Mr. Greenwood's support staff appropriately gathered medical records. Mr. Greenwood---before the petition was filed--- consulted a neurologist but did not retain the neurologist to produce a report. See Exhibit 13 (Timesheets) at 6 (entry for Jan. 27, 2022). Thereafter, Mr. Greenwood filed the petition.

After the petition was filed, Mr. Greenwood again searched for an expert. Exhibit 13 (Timesheets), entries for Feb. 16, 2023; Feb. 24, 2023; Aug. 22-30, 2024. After he did not obtain a supporting report, Ms. Kendrick voluntarily sought dismissal of her petition.

The interesting question is why did Mr. Greenwood file the petition without support from an expert? As an experienced practitioner, Mr. Greenwood almost certainly knew or should have known that Ms. Kendrick would receive compensation only after she supported her claim with an expert's report. Mr. Greenwood conducted a thorough search for an expert after filing the petition. However, having already consulted a neurologist without a positive result, Mr. Greenwood, arguably, should have continued this search for an expert *before* he filed the petition. If Mr. Greenwood had learned before he filed the petition that Ms. Kendrick could not succeed, then Mr. Greenwood presumably would not have filed a case that would not result in any compensation to his client. Yet, by delaying an exhaustive search until after the petition was filed, Mr. Greenwood provided a vehicle by which Ms. Kendrick's attorneys' fees and costs could be reimbursed.

More than 15 years ago, a special master discussed how attorneys representing petitioners could game the system by filing cases without adequate investigation. Lamar v. Sec'y of Health & Hum. Servs., No. 99-583V, 2008 WL 3845165 at *4 n.13 (Fed. Cl. Spec. Mstr. July 30, 2008); see also Austin v. Sec'y of Health & Hum. Servs., No. 10-362V, 2013 WL 659574, at *10 (Fed. Cl. Spec. Mstr. Jan. 31, 2013). A lack of investigation before the petition is filed may, in some future case, warrant a denial of attorneys' fees despite a finding of reasonable basis.

Nevertheless, an award for a reasonable amount of compensation of attorneys' fees and costs remains appropriate in this case. Thus, the next section will determine how much money is reasonable.

### IV. Analysis Part Two – Amount of Attorneys' Fees and Costs

#### A. Standards for Adjudication

The Vaccine Act permits an award of reasonable attorney's fees and costs. 42 U.S.C. § 300aa–§15(e). The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. This is a two-step process. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1348 (Fed. Cir. 2008). First, a court determines an "initial estimate … by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. Id. at 1348. Here, because the lodestar process yields a reasonable result, no additional adjustments are required. Instead, the analysis focuses on the elements of the lodestar formula, a reasonable hourly rate and a reasonable number of hours.

In light of the Secretary's lack of objection, the undersigned has reviewed the fee application for its reasonableness. See McIntosh v. Sec'y of Health & Human Servs., 139 Fed. Cl. 238 (2018).

#### B. Reasonable Hourly Rates

Under the Vaccine Act, special masters, in general, should use the forum (District of Columbia) rate in the lodestar calculation. Avera, 515 F.3d at 1349. There is, however, an exception (the so-called Davis County exception) to this general rule when the bulk of the work is done outside the District of Columbia and the attorneys' rates are substantially lower. Id. 1349 (citing Davis Cty. Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency, 169 F.3d 755, 758 (D.C. Cir. 1999)). In this case, all the attorneys' work was done outside of the District of Columbia.

Mr. Greenwood and his colleagues have charged at hourly rates that special masters have accepted. See Powell v. Sec'y of Health & Hum. Servs., No. 20-1726V, 2024 WL 1996715 (Fed. Cl. Spec. Mstr. Apr. 11, 2024). The rates, therefore, are credited here.

### B.     Reasonable Number of Hours

The second factor in the lodestar formula is a reasonable number of hours. Reasonable hours are not excessive, redundant, or otherwise unnecessary. See Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993). The Secretary also did not directly challenge any of the requested hours as unreasonable.

The undersigned has reviewed the submitted billing entries and finds the request to be reasonable. The billing entries contain sufficient detail to permit the undersigned to assess their reasonableness, and upon review none appear to be objectionable. Respondent also has not indicated that he finds any of the billing entries to be objectionable.

Therefore, petitioner is awarded final attorneys' fees in the amount of $28,246.75.

### C.     Costs Incurred

Like attorneys' fees, a request for reimbursement of costs must be reasonable. Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (Fed. Cl. 1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994). Petitioner requests a total of $646.17 in attorneys' costs. Fees App. at 3. This amount is comprised of obtaining medical records and the filing fee. These items are reasonable and awarded in full.

## V.     Conclusion

The Vaccine Act permits an award of reasonable attorney's fees and costs. 42 U.S.C. § 300aa-15(e). Accordingly, petitioner is awarded a total of **$28,892.92** (representing $28,246.75 in attorneys' fees and $646.17 in attorneys' costs) as a lump sum in the form of a check jointly payable to petitioner and petitioner's counsel, Sean Greenwood.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[2]

---

[2] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.

**IT IS SO ORDERED**.

s/Christian J. Moran
Christian J. Moran
Special Master